The argument is 15-1178, Componex Corporation v. Electronics for Imaging. The argument is 15-1178, Componex Corporation v. Electronics for Imaging, Inc. Good morning. My name is Harry Van Kamp. I'm here with my colleague Joseph Leon. We're from DeWitt, Ross, and Stevens in Madison, Wisconsin. And we represent Componex on this appeal. This appeal involves two parties that have had a long working relationship. It involves two roller designs. One of the roller designs is covered by the 059 patent. It involves a central roller, an outer roller connected by spokes with some balancing lugs on the side. The second patent involves the 076 patent, which involves a cantilever roller. Both of these are narrow cross-sections of very long rollers that are used in large printers by EFI for printing such things as billboards. Both of the designs were designed, developed, and built by Componex for EFI. They deliver not only the rollers to EFI, but they deliver drawings to EFI. Okay. Well, before your time, the clock is moving, so let me just take you to the issue. Correct me if I'm wrong. I see this case as presenting two separate and distinct issues. Correct. One patent, you've got claim construction and infringement, and the second patent went down on infalidity for obviousness grounds. Correct. So let's begin with the claim construction. All right. The district court construed the claim. The claim at issue here, the limitation is structures which are intended to balance the idler. That's correct. Okay. What is your position? What is your view? What is your argument with respect to claim construction? What the district court did here was import functional claims into the claims of the patent. If you review claims one through four of the 059 patent, there are absolutely no functional limitations. It's drafted as claims related to an apparatus in structural language. And what the court has effectively done is said that the fact that the defendant in this case doesn't actually use the balancing lugs in each and every instance for balancing purposes. What does the word balancing mean if it's not a functional term? The word balancing is used to inform an individual who would be looking at this patent, an individual. How can you tell the difference between a balancing lug and a lug which is not a balancing lug? What's the difference in your view? In our view, the structure, we have defined or we suggested for claim construction purposes that the balancing lugs are lugs or they are structures dimensioned and configured to retain balancing pins. It is a structural claim. It's not a functional claim. Aren't you making the use of the word balancing superfluous then? No. What would happen, you could have just said that and taken out the first balancing word, the first time you used the word balance, right? It is an intended purpose. And I think it is intended to inform somebody of ordinary skill in the art that when they see this structure, they understand that this structure provides a very easy way for balancing the roller. It doesn't necessarily require that it be used for that. I mean, what happened as a result of this decision, the judge said that they are intended for balancing. So if you have two manufacturers that are purchasing the same exact roller, if one of the manufacturers intends to balance them, then it infringes. And if the other manufacturer buys exactly the same roller but doesn't intend to balance them, then it doesn't infringe. And we think that leads on a ridiculous… I don't think the district court made this a matter of subjective intent. It made it a matter of how they're actually used, whether they're used to balance or they're not used to balance. The word that the court adopted, the structure, it said that it was a structure that was intended to balance. That's the interpretation that was given by the trial court. Isn't that the definition of what a balancing lug is as opposed to some other kind of lug? It's a lug that's intended to receive balancing pins. It is a lug that can be used for balancing, and it is a lug that is dimensioned and configured to receive a balancing pin, but it doesn't necessarily need to. And I think the decision leads to a very difficult, if not ridiculous, result where, depending upon the intent of a user, this either infringes or it does not. Well, you've got not only a problem with the actual words of the claims and beyond the specification even. You've got some prosecution history where a claim amendment here seemed to have – the claims seemed to have been differentiated by prior art in the process of the examination on this basis with the change in the claim language that included this as a means of distinguishing it from the Somerville weapons, right? Well, there clearly was discussion about how these lugs could be used, but if you look at the… Well, there was more than discussion. The claims were provided. The examiner rejected them. The claims were amended. So there's not a small thing. There was a direct amendment here in response to asserted prior art in connection with putting the balancing asset that's in the limitation. That's correct. Doesn't that double down on the notion that notwithstanding even the claim language, that given the prosecution history, that that term has to be given force and effect when we're doing the claim construction? I think that what the court did was import language from the remainder of the patent into the claims. And I think very clearly what happened… Well, I'm talking about the prosecution history. There's no importation of language. Okay. Going back to the history, what happened was the court – I mean the examiner considered this, rejected it, considered it, and rejected it, but ultimately issued patent claims that have no functional language. And in fact, all of the functional language was removed immediately before the patent was issued, which clearly suggests that it was never intended to have a functional limitation. And I think the claim language is very clear that it is issued in structural, not functional terms. And I believe that whether or not this is used for balancing or not, the lugs could be clearly defined as structures dimensioned and configured to retain balancing pins, which is a structural claim, not a functional claim. My theory is even if the lugs don't actually balance, that because they could have been used to balance, they're infringing. Their device is infringing. Correct. But they provide an intended purpose, but not necessarily the purpose that somebody uses them for. Okay. So how do you determine infringement then? You have to calculate – how would one calculate damages? You'd only have damages with respect to those that were used to balance, or your damages would cover everything? Well, it depends whether you follow the court's decision or not. I think the court's decision would be that, yes, you would only have infringement if somebody actually used them, but no, from our perspective, if it defines a structure and they use the structure, then it infringes. Whether or not they are used for balancing. No, you don't even require them to use the structure. If it has a lug on one part of the roller that could have been moved from that part to another part to balance the roller, then it's infringing, even if it's not actually used to balance. Correct? Correct. Well, I mean, I believe that the object is to look at the claim language and determine what the claim language is, and I don't believe that there's any functional limitation there. And I think the court found that there was. Why don't you, in your remaining time, maybe touch on the obviousness issue with respect to the patent? Okay. This is a cross-section of the roller, and the obviousness issue arises because of prior art where screws or threaded devices were used to connect an outer roller to an inner roller. And the error of the court and of EFI's argument in this is that it only focuses on one of the functions of the weld. It focuses on the function of the weld, which is to fix the outer roller to the inner roller, but what it completely ignores is the fact that the weld is also a movable part, which is not something that a weld is recognized as. That the weld is a fulcrum where there is a bending over that weld, and that is not something that is focused on in the prior art, and it is not something that is focused on or even discussed by the decision. And so it isn't obvious at all that a weld, and as you can look at this, it certainly doesn't look flexible, and I don't believe that there is anything in the prior art that would suggest that it would be obvious to somebody of ordinary skill in the art. But what's the difference between this and the prior art? In the prior art, it wasn't a loose bolt. It was actually welded in place, so there wasn't any movement possible, right? Well, it wasn't loose on the outer roller. It was loose on the inner roller. It was not affixed to the inner roller at all. It was simply screwed into a blind hole, and clearly that could provide movement. And so I think that one of the most important things, I think, to look at here is that both the judge and the examiner looked at the same prior art, and one of them concluded that it was the same, and one concluded that it wasn't. And I think that at an absolute minimum, when a trial judge says that no reasonable juror could find a certain thing, they're making a finding of fact. And in this case, the examiner made just exactly the opposite finding of fact. Well, when the courts adjudicate invalidity cases, it typically involves the same prior art. Are you suggesting that you can't find invalidity at the district court if an examiner granted the patent over the same prior art? That can't be right. That's most of our cases. I am not suggesting that they can't, but this is a summary judgment decision where the court determined that no reasonable juror could conclude. So kind of as a matter of law, you can't grant summary judgment on invalidity of a patent exclusively because, unless there's different prior art than what was before the examiner? I am saying that when... Even though at least one person in the world looked at it and thought it was valid, or not invalid? Right. In this case, the trial court looked at the same prior art that the examiner looked at. I am not saying that there are no circumstances under which the trial court can't make an invalidity finding. What I am saying, though, is that the court didn't look at the fact that the weld is a pivot point, which is very different, I think, than all of the other prior art, which did not recognize it. The prior art recognized that it was a method for fixing two pieces of metal together, but didn't look at it as a point at which there would be pivoting or movement. What was the outcome in this case? I mean, this patent went down for validity, but on the earlier patent we were discussing, the claim construction, there was at least a minor portion of the products were found to infringe, correct? No. No, because the products that would have infringed, that had been balanced, had been purchased from components. So there was no evidence that EFI had purchased them from other entities. Can I ask one other question? I know you don't like this hypothetical, but accept for the moment that we were to rule against you on the claim construction and on the validity issue. Is there anything left of the case do we have to address the notice issue under that hypothetical? Not on the notice issue. If you find obviousness and also if you conclude that the balancing is a required element of the claim. Thank you. And just to follow up on Judge Duck's point about what's left in this case, the 059 is still in effect, right? Of course. And is there any other litigation pending with respect to other parties where you've asserted that patent? Not at this time. Thank you. We'll restore three minutes of rebuttal. Thank you. Good morning. Excuse me. Good morning. May it please the Court, Michael von Lohenfeldt for the appellee, Electronics for Imaging. May I start with the obviousness question because counsel makes the point that the district court didn't consider his argument brought up in the reply brief that the weld allows the pivot movement. The reason the district court didn't consider that is the reply brief on appeal is the first time anyone has made that argument in this case. So we don't believe that argument is properly before the court at all. It's just a new argument they invented in their reply, not having any response to our appellee's brief on the obviousness point they did raise. I would note that the prior art also allows such movement. That's the whole point of these cantilevered rollers. They're supported sort of towards the middle so that the ends are free to move and pivot under pressure. That's what provides uniform pressure at the nip. That's the point of the Bush patent. That's the point of Franklin. And it's the point of the 076 patent. That's not something new or novel. The fulcrum just has to be something hard, which is why a welded bolt and a weld are exactly the same thing. But he says that in the prior art, the welded bolt was only welded to the outer shell and not the inner shell, so it could move relative to the inner shell. What's the response to that? Well, it is correct that the weld is only on the outer shell. There is nothing in the record that suggests that the inner bolt moves. The whole point of the mounting means in Bush, which is what we're talking about, is that it secures the outer shell to the inner shell so that the tube functions. Council makes this argument that somehow there's movement on the inside, but there's nothing in the record that suggests that that's true. And in fact, if that were true, I suspect the roller wouldn't stay together. We're talking about really long rollers. I mean, some of these rollers are five meters long. So this is just an argument that they're inventing. There's no record evidence that the Boyce device was intended to sort of slip and slide on the inside. It's intended to create a mount, a hard point, that acts as a fulcrum, just like the weld acts in 076. And our briefs discuss a number of other patents with slightly different kinds of welds where people have used metal rollers with different pieces, some of which overlap but are not supported, so that pressure makes them move and take a different shape under pressure. That's the solution that's being derived here. There's nothing new about the 076 patent in that regard. And there's no conflict in the evidence here. The evidence they proposed on summary judgment, we don't disagree with. It's obvious that a screw and a weld are not literally the same thing. It's obvious that if you don't apply heat, you don't have the risk of annealing. But those obvious facts don't relate to the technology at issue, and that was what the district court held was that even if you assume that all the evidence before is true, a person having ordinary skill in the art at the relevant time would have known through the application of common sense that instead of using screws and then welding them, you could simply put welding material in a hole and do the same thing. That's why the 076 patent is obvious. In claim construction, we've got cases including a case called Paragon where we strongly discouraged the importation of use of functional limitations imported into apparatus claims. Why isn't that problematic for you in this case? So for two reasons. First off, Paragon recognizes that that rule doesn't apply where there's actually a limitation in the claim, or some of the other law recognizes that where the claims – the prosecution history creates a limitation in order to distinguish prior art. When you say limitation in the claim, just – you're meaning because the word balancing. Correct. The compound noun balancing lug has to be given meaning. It doesn't just mean lug. It means balancing lug. Just like light switch means a switch to turn on the light, heating coil means a coil that's used to produce heat. The purpose of a balancing lug is to balance. Otherwise, they just got a patent on lug. And we know the district court didn't make up this definition. It's verbatim the definition that the inventor himself proposed to the examiner when the examiner made exactly this point, that there's all kinds of lugs in the prior art, and lugs could do many different things. And the examiner came back with the third rejection to which the traverse was, in this specification, we have defined balancing lug to mean a structure which is intended to balance the idler. So the district court applied not only the plain meaning of the word balancing lug, but the actual meaning, the literal definition that was provided during the prosecution history. And as the court found, it would throw out the entire prosecution history if they were allowed to get a patent on a specific lug for a specific purpose and then claim infringement based on any lug whether or not we used it to balance. Then they just have a patent on lug, which if you look at that shape, I mean my kid loves Legos, and they have those little hands. It's exactly that shape. It's just a C shape to hold anything. They offer no definition before this court or before the district court that gives meaning to the word balancing. The best they can do is say, well, a balancing lug is intended to hold a balancing pin or structured to hold a balancing pin. The problem with that is if you look at their definition of balancing pin, they say a balancing pin is a structure intended to be held by a balancing lug. So you get a circle where they're basically saying anything that holds anything else is a balancing lug and pin. And you get this sort of crazy use of the English language where they say we use balancing lugs to screw in end caps. That's an end cap lug if you want to describe the lug by the purpose. There's no rational reading of balancing lug that strips the word balancing out of that definition, and that would be true even without the prosecution history. But here, just as in Springs Window fashion, just as in computer docking stations, there's a specific statement, repeated statements, but a very clear one on the definition in the prosecution history in order to distinguish prior art that had been the basis for rejection. And they can't walk away from that. If the panel has no other questions, I think, we respectfully request the court to affirm. Thank you very much. Thank you. Thank you. Two things. First of all, with regard to the comment by counsel that there was nothing in the record about movement that's just not accurate, the components expert testified in his report stated that welds between the inner and outer tubes required by the 076 patent claims function in a dual fashion. First, they function as a normal weld to connect the inner and outer tube. Second, they function as pivot points about which the outer tube can flex in a fashion depicted in particular drawings. That's found at A322 and 23 of the record. So it was mentioned. Counsel also talked or mentioned the light switch. And I'd like to analyze that in context with the roller and the balancing pins. I mean, is counsel suggesting that if you never flip a light switch, you don't infringe? But if you have a light switch where you do flip it, you do infringe? I think he's suggesting that if you use the light switch, it's a door stop. It's not a light switch. Well, I mean, I think that that's probably true, but I think that the analogy is very similar to what we're talking about here. And the fact that the dimension and configured to hold a pin and then to define a pin as something that can be used because it is dimensioned to fit within the balancing lug is a structure that I believe requires a structural interpretation. And I would ask the court to reverse on both of those. If there are any questions, I'll be happy to. Thank you. Thank you. We thank both counsel and the cases for being here.